# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

| | |
|---|---|
| In re Denise M. Kuzniewski,<br><br>**Debtor.** | Bankruptcy No.  13-B-82613<br><br>Chapter 13<br><br>Judge Thomas M. Lynch |

## MEMORANDUM OPINION

Debtor Denise Kuzniewski seeks sanctions against North Shore Bank (a/k/a Illinois State Bank) ("North Shore") and North Shore's attorney, Andrea Lang, for their alleged failure to immediately "release" funds in accounts maintained at McHenry Savings Bank ("McHenry Bank") that were subject to respondents' pre-petition third party citation to discover assets upon McHenry Bank.  For the reasons set forth herein, the motion will be denied.

I.    FACTUAL AND PROCEDURAL BACKGROUND

The Debtor, an attorney, conducts her law practice through a limited liability company for which she is the 100% owner, The Law Offices of Denise M. Kuzniewski, LLC ("Kuzniewski LLC").  On June 7, 2013, Judge Bolger of the 22nd Judicial Circuit, McHenry County, Illinois entered a judgment of $22,548 plus court costs against "Denise M. Kuzniewski, individually and d/b/a the Law Office of Denise M. Kuzniewski" in favor of North Shore in a complaint under the Illinois Forcible Entry and Detainer Act. (Mot. for Rule to Show Cause, Ex. A, ECF No. 10.)  The action was based on a default by the Debtor or her law firm under an office lease in property.  North Shore had obtained that property through a deed in lieu of foreclosure from the prior landlord.

In an effort to enforce the judgment, North Shore, through attorney Lang, served two third party citations to discover assets on or about July 12, 2013, upon McHenry Bank. Both the Debtor and Kuzniewski LLC conduct their banking business at that bank. The citation notices showed a return date of July 29, 2013, at 9:00 a.m. (Mot., Ex. B, ECF No. 10.) On or about July 24, McHenry Bank filed its answer to the citation with the circuit court wherein it admitted it was in possession of a checking account with a balance of $9,528.74. (Mot., Ex. C, ECF No. 10.) In response to the citation, McHenry Bank froze three bank accounts: an account in the Debtor's name with a petition date balance of $3,497.67, and two accounts in Kuzniewski LLC's name: one with a petition date balance of $6,019.23 and the other with a negative balance.[1] (Stipulation, Ex. A, ECF No. 41.) The Debtor now admits that the two bank accounts held in the name of Kuzniewski LLC are not property of the bankruptcy estate. (Stipulation, Ex. A, ECF No. 41.)

On July 29, 2013, the Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code. Her initial filing consisted of a skeletal petition, submitted without schedules. This court's docket reflects that the Debtor's attorney electronically filed her petition at 8:28 a.m. Later that morning the citation hearing commenced before Judge Bolger. Attorney Lang appeared on behalf of North Shore as well as the Debtor's bankruptcy counsel, Mr. Brody. Ms. Lang initially asked the court to enter a turnover order in accordance with McHenry Bank's answer to the citation. The Debtor's counsel then stated that he had sent to Ms. Lang an e-mail about its bankruptcy after the Debtor had filed its Chapter 13 petition that morning. (Transcript, July 29, 2013 Hearing, ECF No. 32.) Ms. Lang testified, and it is not disputed, that she was unaware of this news until then. The court then briefly recessed. After some discussion between the attorneys, the matter was recalled and Judge Bolger was informed that Debtor's attorney

---

[1] These three balances add up to $9,513.74. The Debtor has not explained the $15 discrepancy from the $9,528.74 amount listed in McHenry Bank's answer to the citation.

requested that the state court order the funds held by McHenry Bank be turned over to the

Debtor. Ms. Lang asked that the funds remain with McHenry Bank until the bankruptcy court

could make a determination. The Debtor's counsel responded by insisting that the funds subject

to the citation "belong" to the Debtor. Judge Bolger then ruled that it was the bankruptcy court

that had jurisdiction to decide that matter, but the Debtor still wished to be heard:

> THE COURT: If Miss Kuzniewski has filed a Chapter 13, I'm not going to enter an order concerning these funds at all. The order should be entered by the bankruptcy court.
> MR. BRODY: Well, that's not entirely true, Judge.
> THE COURT: Yes, it is true.
> MR. BRODY: Can I – Can I respond with some –
> THE COURT: You can respond, but I'm not going to enter an order. I don't have jurisdiction of this matter anymore. The bankruptcy court has jurisdiction of the matter.
> . . . .
> MR. BRODY: Counsel has an affirmative matter to dismiss this as of now. If she doesn't –
> THE COURT: I don't think – I don't know that that's true or not. You can bring that matter before the bankruptcy judge.
> MR. BRODY: I shall.
> THE COURT: Good. Thank you.
> MR. BRODY: Okay.
> THE COURT: I need an order.
> MR. BRODY: So what are we doing with the funds then at this time, Judge?
> THE COURT: We're just going to continue this matter generally. I'll continue it to a specific date if you want me to.
> MR. BRODY: No, let's leave it general.

(Transcript, ECF No. 32.)

The following day the Debtor's counsel sent an e-mail to Ms. Lang to again demand that

North Shore dismiss its citation and "release the funds back to Ms. Kuzniewski on or before

noon on August 1, 2013." (Mot., Ex. H, ECF No. 10.) Attorney Lang responded on August 1.

She rejected the demand, and noted Judge Bolger's ruling about his lack of jurisdiction and

intention to preserve the *status quo* pending action in the bankruptcy proceedings. (*Id.* at Ex. J.)

On August 6, 2013, the Debtor filed this motion for rule to show cause against attorney Lang and

North Shore. The Debtor notes that North Shore failed to accede to her demand that North Shore immediately "dismiss" its citation and "release the funds" held by McHenry Bank back to the Debtor, despite counsel's requests made in front of Judge Bolger and in the July 30, 2013 e-mail.

On August 13, 2013, the Debtor filed a motion seeking an extension of the time to file her bankruptcy schedules. On August 23, 2013, the day of the initial hearing on the motion for rule to show cause, this court granted the Debtor the requested extension. The Debtor filed her schedules on August 30, 2013. Schedule B disclosed a checking account of $3,502.67 at McHenry Bank. Her Schedule C asserted an exemption in that account in the same amount pursuant to the Illinois 'wild card exemption,' 735 ILCS 5/12-1001(b). An additional $3,808.50 was deposited into the Debtor's personal checking account at McHenry Bank between the petition date and August 30, 2013. This amount, the Debtor explained, constituted periodic child support payments from her ex-husband.

On September 13, 2013, and while the parties were in the process of briefing this motion, the Debtor filed a motion to avoid the North Shore lien in her checking account pursuant to 11 U.S.C. § 522(f). North Shore appeared but did not contest the motion, so long as it was without prejudice to the motion for rule to show cause and without prejudice to the two accounts in the name of Kuzniewski LLC. In an order entered on October 4, 2013, the court granted the motion to avoid the citation lien on the Debtor's personal checking account only and directed North Shore to provide a copy of the order to McHenry Bank and to authorize the release of the lien. The parties reported on November 8, 2013 that the funds in the personal account had been released to the Debtor. However, the Debtor indicated that she wished to proceed on the motion for rule to show cause.

II.      JURISDICTION

The court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1334 and Internal

Operating Procedure 15(a) of the United States District Court for the Northern District of

Illinois. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (G) and (O).

III.      DISCUSSION

The central issue in this case is whether it was a violation of the automatic stay for North

Shore and its attorney to fail to immediately take steps to either dismiss its citation or to cause

McHenry Bank to release its administrative hold on the Debtor's account. An automatic stay

goes into effect upon the filing of the bankruptcy petition, prohibiting certain actions against the

debtor or the property of the bankruptcy estate. A debtor's initial filing

> operates as a stay, applicable to all entities, of –
> (1) the commencement or continuation, including the issuance or
> employment of process, of a judicial, administrative, or other action or
> proceeding against the debtor that was or could have been commenced before
> the commencement of the case under this title, or to recover a claim against
> the debtor that arose before the commencement of the case under this title;
> (2) the enforcement, against the debtor or against property of the estate, of a
> judgment obtained before the commencement of the case under this title;
> (3) any act to obtain possession of property of the estate or of property from
> the estate or to exercise control over property of the estate;
> (4) any act to create, perfect, or enforce any lien against property of the
> estate;
> (5) any act to create, perfect, or enforce against property of the debtor any
> lien to the extent that such lien secures a claim that arose before the
> commencement of the case under this title;
> (6) any act to collect, assess, or recover a claim against the debtor that arose
> before the commencement of the case under this title;

11 U.S.C. § 362(a). The automatic stay imposed under Section 362 serves two broad purposes:

> First it provides debtors with protection against hungry creditors: '[i]t gives the
> debtor a breathing spell from its creditors. It stops all collection efforts, all
> harassment, and all foreclosure actions. It permits the debtor to attempt a
> repayment or reorganization plan, or simply to be relieved of the financial

pressures that drove him into bankruptcy.'. . . Second, the stay assures creditors that the debtor's other creditors are not racing to various courthouses to pursue the independent remedies to drain the debtor's assets.

*Dean v. Trans World Airlines, Inc.*, 72 F.3d 754, 755-56 (9th Cir. 1995) (quoting H.R. 595, 95th Cong, 1st Sess., at 340 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6296-97).

Section 362 provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. §362(k)(1). To recover damages, a debtor must prove by a preponderance of the evidence, that:

(a)     A bankruptcy petition was filed;
(b)     The aggrieved debtor is an 'individual';
(c)     The creditor had notice of the petition;
(d)     The creditor's actions were willful and violated the stay; and
(e)     The debtor is entitled to a form of relief provided by Section 362(k).

*Kondritz v. Univ. of Phoenix (In re Kondritz)*, 2011 WL 2292292 at *4 (Bankr. S.D. Ind. June 8, 2011). "A willful violation does not require specific intent to violate the stay; it is sufficient that the creditor takes questionable action despite the awareness of a pending bankruptcy proceeding." *In re Radcliffe,* 563 F.3d 627, 631 (7th Cir. 2009).

A.  Certain Forms of Inaction May Constitute A Violation of the Stay

Here, the Debtor does not allege that either Ms. Lang or North Shore took action in violation of the stay. The Debtor instead contends that the respondents had an affirmative duty to take action, and therefore their *inaction* was a violation of the stay. While there are several situations in which a failure to take affirmative action may itself be a violation of the automatic stay, none apply to the facts in this case.

1. Exercising Control Over An Asset of the Estate

In *Thompson v. General Motors Acceptance Corp.,* the Seventh Circuit held that a creditor who repossessed a vehicle pre-petition and refuses to return it to the debtor after a Chapter 13 case is filed violates the automatic stay. 566 F.3d 699 (7th Cir. 2009). The court held that "the act of passively holding onto an asset constitutes 'exercising control' over it, and such action violates section 362(a)(3) of the Bankruptcy Code." *Thompson,* 566 F.3d at 703. While Section 362(e) gives a secured creditor the right to request adequate protection of its interest in such property, that right is not a defense or an excuse not to return the vehicle. Instead, "a creditor must first return an asset in which the debtor has an interest to his bankruptcy estate and then, if necessary, seek adequate protection of its interests in the bankruptcy court." 566 F.3d at 708.

*Thompson* is informative, but not directly on point. Here, unlike the creditor in *Thompson*, the respondents were not in possession of the funds in the account. Instead, the funds were in the Debtor's account at a third party bank. Nor were the funds under the control of the respondents. While the third party bank had frozen the accounts in response to the pre-petition citation notice served by the respondents, the respondents could not obtain or direct the transfer of such funds without a further court order. *See, e.g., Bank of America, N.A. v. Johnson (In re Johnson),* 479 B.R. 159, 171 n.56 (Bankr. N.D. Ga. 2012) (fact that a garnishment order freezes funds "is not the type of 'control' over property of the estate that the automatic stay properly prohibits"). *Cf. In re Tires N Tracks, Inc.,* 498 B.R. 201, 205 (Bankr. N.D. Ill. 2013) (Creditor could simply have refrained from enforcing its lien and let its Illinois citation lapse, but instead "dismissed the Citation despite the fact that alternatives not requiring dismissal were available."). The respondents would have committed an "act to obtain possession of property of the estate" or

an act to collect a pre-petition claim against the Debtor with knowledge of the bankruptcy had they requested Judge Bolger to enter an order compelling McHenry Bank to turn over the account funds.  But the state court transcript showed that after attorney Lang was informed of the bankruptcy – which the Debtor commenced less than an hour before the initial state court return hearing on the citation – she only asked to put over the citation proceeding until the bankruptcy court could make a determination.  At no time did respondents seek to obtain possession of the funds being held by McHenry Bank after they became aware of the bankruptcy.

2. <u>Undoing Prior Violations of the Automatic Stay</u>

Failure to take "reasonable steps" to remedy a prior stay violation in itself violates the automatic stay. *Copeland v. Kandi*, 441 B.R. 352, 260 (Bankr. W.D. Wash. 2010).  The Seventh Circuit has held that a "creditor has an affirmative duty to undo acts which violate the stay, even if she had no actual notice of the bankruptcy at the time the acts were performed." *Smith v. Albert (In re Smith)*, No. 96-2881, 111 F.3d 133 (7th Cir. Apr. 8, 1997).  Had North Shore initiated the citation proceeding post-petition and in violation of the automatic stay, it likely would have had an affirmative duty to dismiss that proceeding in order to return to the *status quo* as of the petition date.  Where, for example, a creditor who asked a state court to find her ex-spouse in contempt for violation of a support decree, the creditor could not sit by and "simply rely on the normal adversarial process" where the state court had entered a contempt order and judgment even though the creditor was unaware of the defendant's Chapter 11 bankruptcy petition when the contempt hearing began. *Sternberg v. Johnston*, 595 F.3d 937, 945 (9th Cir. 2010), *cert. denied*, 131 S.Ct. 102 (2010).  Because the state court entered a contempt order and judgment against the debtor post-petition, the Ninth Circuit held, the plaintiff/creditor had the obligation "to do what he could to relieve the violation" and "at a minimum [to] alert the

appellate court to the obvious conflicts between the order and the stay." *Id.* at 945. *See also S. Dallas Water Auth. v. Guar. Co. of N. Am.,* 767 F. Supp. 2d 1284, 1298 (S.D. Ala. 2011) ("[i]f a creditor acts without knowledge of the bankruptcy in violation of the automatic stay it must affirmatively act immediately to restore the pre-violation status quo.") (citations omitted); *In re Copeland,* 441 B.R. at 365 (defendant required to dismiss counterclaims filed post-petition and in violation of stay). Here, however, it is undisputed that the citation was issued and served on the third party bank pre-petition. As the court recently held in *In re Panos*, "[e]ven § 362(a)'s prohibitions on the continuation of proceedings and enforcement of judgments seem most naturally limited to stopping acts that seek relief against the debtor or are undertaken to control property of the debtor or his bankruptcy estate." No. 13-21338, 2013 WL 1498889 (Bankr. E.D. Wis. Apr. 10, 2013).

3.   Commencement or Continuation of a Proceeding

Although Section 362(a)(1) prohibits both the commencement and the "continuation" of a judicial proceeding, most courts have held that at least in some instances a case initiated before the petition date may be stayed for the course of the bankruptcy rather than dismissed without violating the automatic stay. *See, e.g., Dennis v. A.H. Robins Co., Inc.,* 860 F.2d 871, 872 (8th Cir. 1988) (district court "had the right to require counsel to keep the court informed of the progress of the bankruptcy"); *Alley Cassetty Co. v. Wren (In re Alley Cassetty Co),* 502 B.R. 609, 614 (N.D. Ga. 2013) (where state court lawsuit "was stayed pursuant to a suggestion of bankruptcy" and creditor had "promptly assured [debtor] in writing that it would not take any further actions against" debtor, creditor "did not need to take any steps to ensure that the automatic stay was not violated"); *Kline v. Deutsche Bank Nat'l Trust Co. (In re Kline),* No. 09-A-1035, 2011 WL 3879485 (Bankr. D.N.M. Sept. 2, 2011) (not required to dismiss pre-petition

foreclosure proceeding upon learning of bankruptcy); *In re Long,* No. 07-60011-7, 2009 WL
981134 (Bankr. D. Mont. Jan. 9, 2009) (obligation to "discontinue" collection proceedings
permits staying rather than dismissing the proceeding if proceeding was commenced pre-
petition).[2] The Seventh Circuit has not ruled on this question. In *Brown v. JP Morgan Chase
Bank,* the court noted in *dicta* that, "[w]e have not held that the automatic stay imposes on
creditors an affirmative duty to dismiss pending lawsuits," 334 Fed. Appx. 758 (7th Cir. June 23,
2009), while recognizing that the Ninth Circuit had so held in *Eskanos & Adler, P.C. v. Leetien,*
309 F.3d 1210 (9th Cir. 2002). However, the state court collection action in *Eskanos* had been
filed ten days after the petition date and, therefore, dismissal was required to cure the original
stay violation of commencing the action. 309 F.3d at 1213.

In at least one Illinois case, while noting that some courts in other jurisdictions had
required garnishment proceedings commenced pre-petition be dismissed pending resolution of
the bankruptcy petition, the district court held that it would "not require formal dismissal of the
garnishment proceedings [and would] not take any action in furtherance of the proceedings until
the bankruptcy proceedings are resolved." *Chicago Painters' & Decorators' Pension, Health &
Welfare & Deferred Savings Plan Trust Funds v. Cunha,* 121 B.R. 232, 233 (N.D. Ill. 1990)
(Williams, J.).

Here, the citation proceeding was commenced pre-petition. The state court was made
aware of the bankruptcy quickly – less than an hour after it was filed – and before the state court
made any substantive ruling. The state court immediately stayed the citation hearing and the

---

[2] It has not been alleged that the Debtor was required to appear at future status hearings during the pendency of the
bankruptcy case. *Cf. In re Hafer,* No. 13-10568, 2013 WL 5925167 (Bankr. E.D. Va. Nov. 5, 2013) (requiring
dismissal of a continued hearing on summons to answer interrogatories "where the debtor is required to appear a
second time in State court and explain the status of her bankruptcy, on pain of being arrested" but also noting that
the court did not "require that *all* pending civil actions be dismissed on the filing of a bankruptcy case") (emphasis
added).

respondents did not request that the court do otherwise. No obligations, deadlines or need to respond were imposed on the Debtor until the stay was lifted or the bankruptcy court ordered otherwise. This was sufficient and did not constitute a commencement or continuation of a judicial proceeding in violation of Section 362(a)(1).

4. Continuing Act to Enforce or Collect a Judgment or Debt

In some instances, a creditor may have an affirmative obligation to terminate certain acts or proceedings which were commenced pre-petition if they have the post-petition effect of collecting or attempting to collect a debt. Where a debtor voluntarily initiates an automatic payroll deduction arrangement to pay a pre-petition debt, for example, the creditor violates the stay by continuing to deduct such amounts post-petition without the debtor's formal post-petition consent. *In re Hellums,* 772 F.2d 379, 381 (7th Cir. 1985) ("We hold that Congress intended the stay of section 362(a)(6) to apply to the automatic (as well as coerced) transfer and application of post-petition funds to the prepetition debts of Chapter 7 debtors."). Thus, a creditor who commenced garnishment proceedings pre-petition has an obligation to make efforts to stop the garnishment upon learning of a bankruptcy. *See, e.g., Chicago Painters' & Decorators' Pension, Health & Welfare & Deferred Sav. Plan Trust Funds v. Cunha,* 121 B.R. 232, 233 (N.D. Ill. 1990). A garnishment proceeding must be stayed, as the *Cunha* decision explains, because it is an "indirect proceeding or act to collect, assess and recover a claim against the debtor." *Id.* at 233. *Cf. In re Kline,* 2011 WL 3879485 (Bankr. D.N.M. Sept. 2, 2011) ("Unlike a garnishment action, where the debtor continues to have wages garnished while the automatic stay is in effect until the garnishment is stopped, the defendant in a foreclosure action does not lose his or her property until after the creditor obtains a judgment for foreclosure and completes the foreclosure sale."). Similarly, where the creditor has set a process in motion pre-petition that will have the

continuing effect of collecting a debt until terminated by such creditor, failure to act can constitute a violation of the stay. *Galmore v. Dykstra,* 390 B.R. 90, 914 (Bankr. N.D. Ind. 2008) (failure to seek recall of a bench warrant issued for the debtor's arrest).

Here, the Debtor emphasizes that her bank put an administrative hold on her accounts in response to the citation and that exempt child support payments continued to be deposited in those accounts. She first cites *In re Hall-Walker* from this district to argue that the respondents are, therefore, required to dismiss the citation proceeding. 445 B.R. 873 (Bankr. N.D. Ill. 2011). In that case an ex-spouse had initiated pre-petition a post-dissolution contempt proceeding in a divorce case against the debtor. Over the next fifteen months and while the bankruptcy was pending, the state court held numerous status hearings on "the collection efforts of the ex-spouse [that resulted in] continuing the court's findings of indirect civil contempt against the Debtor, as well as the [respondent's] right to file a fee petition." *Id.* at 875. The bankruptcy court determined that these contempt hearings were continued for the "ultimate purpose of ensuring" that the Debtor would be forced to pay her mortgage arrearage as required under the divorce decree. *Id.* at 878. The bankruptcy court found that "[d]uring a time when the Debtor should have been focused principally on her bankruptcy case in an effort to reorganize her debts, she was being summoned to Domestic Relations Court, accruing additional attorney's fees and facing threats of incarceration for her failure to refinance the mortgage." *Id.* at 877. The court considered the respondents' continuing affirmative actions to be a continued post-petition pursuit of claims against the debtor that amounted to a willful violation of the automatic stay. *Id.*

The citation proceeding under the Illinois statute, however, significantly differs in its substance and effect. Pursuant to 735 ILCS 5/2-1402(m), the proper service of a citation to discover assets on a third party respondent "creates a lien on 'all personal property belonging to

the judgment debtor in the possession or control of the third party or which thereafter may be acquired or come due the judgment debtor and comes into the possession or control of the third party to the time of the disposition of the citation.'" *Cacok v. Covington,* 111 F.3d 52, 54 (7th Cir. 1997).[3]   The citation to discover assets serves at least three functions: "(1) it automatically creates a renewable six-month lien on all of the judgment debtor's non-exempt personal assets and income in state and federal courts; (2) it provides the creditor with a specialized discovery procedure to assist it in determining the existence and location of assets that might be seized and sold to satisfy the judgment debt; and (3) it provides a mechanism and forum for compelling turnover of non-exempt assets, so that they might be sold to satisfy the judgment debt." *In re Tires N Tracks, Inc.,* 498 B.R. at 204.   It can also be used to safeguard and prevent dissipation of a judgment debtor's assets before the citation court can make a proper determination of the debtor's assets and enter appropriate orders. *Mendez v. Republic Bank,* 725 F.3d 651, 662 (7th Cir. 2013).

It is this mixed nature of the proceeding that causes the tension with Section 362(a).  The Debtor directs this court to a recent unpublished opinion in this district in which the court sanctioned a collection law firm for violating the automatic stay "when it refused to take steps to release the hold [that the third party citation respondent bank had placed on the debtor's deposit account] upon learning of the bankruptcy petition." *In re Rose*, No. 12-B-27635, 2012 WL 4511342 (Bankr. N.D. Ill. Oct. 2, 2012).   However, that decision – which notably does not consider the unique nature of the citation lien, the bankruptcy code's policy and protections for valid secured claims or enter any order against the judgment creditor (as opposed to the

---

[3] The lien is considered perfected as of the date the citation is served on the citation respondent. *Cacok,* 111 F.3d at 54.

collection law firm) – appears to have limited application to the questions presented here.[4] *In re Rose* involves the post-petition activities of a collection firm in connection with a citation upon the debtor's bank account – a firm that was "an experienced collections law firm that knew of both the bankruptcy petition and the automatic stay." *Id.* at *3. The firm informed the debtor that it required the debtor to obtain an order from the bankruptcy court before it would take steps to release an administrative "hold" placed on the debtor's account. Despite this and without communicating further with the debtor, the collection firm then caused the circuit court to dismiss the citation and the hold to be released. Unaware of this, the debtor moved for sanctions under Section 362 against the collection firm. The collection firm then "exacerbated the situation when it failed to appear at the initial hearing" on that motion to inform the bankruptcy court that the funds were released. *Id.* at *4. As the court noted: "[a] simple and prompt phone call once [the collection firm] changed its position could have avoided this entire situation." *Id.* The *Rose* decision concerns only the imposition of sanctions upon the collection firm for this conduct and its precedential value is questionable inasmuch as the order granting sanctions was later vacated on a motion for relief from judgment. (No. 12-B-27635, Order Vacating Order, Nov. 20, 2012, ECF No. 41.)

In contrast, at least one published opinion from this district has stated that a judgment creditor is not required by the automatic stay to dismiss a citation, and if the creditor does so he or she will be treated as having voluntarily relinquished the citation lien. *In re Tires N Tracks, Inc.*, 498 B.R. 201, 205-06 (Bankr. N.D. Ill. 2013) ("obtaining relief from the automatic stay may not be required where the judgment creditor seeks merely to inform the state court of the

---

[4] The debtor in *Rose* did not seek sanctions against the judgment creditor who held the citation lien, and the creditor had already voluntarily dismissed its citation by the time the motion was heard, so it is not surprising that the court did not discuss the potential effect of dismissal on the creditor's lien rights or whether any lesser step than dismissal would have been acceptable.

bankruptcy filing and of the automatic continuation of the citation lien, because the creditor is

not then acting to enforce the citation lien"). In that case, the court sustained an objection to a

judgment creditor's secured claim finding that the creditor had "relinquished [its secured] status

when it voluntarily withdrew the Citation, thereby relinquishing its citation lien." 498 B.R. at

207. The creditor argued that its dismissal of the citation proceeding was not voluntary because

it was required to do so by the automatic stay, but the court disagreed. Instead, the court held

that "respect for the stay did not require such a drastic step;" the creditor could have either

moved to modify the automatic stay or "could simply have refrained from enforcing its lien, let

the Citation lapse and then argued that § 108(c) tolled the six-month period set forth in Illinois

Supreme Court Rule 277(f)." 498 B.R. at 205.

Other courts have also agreed that a creditor should not be required to relinquish a valid

lien to avoid sanctions for violating the automatic stay and that such interpretation could violate

the creditor's right to due process. *See, e.g., In re Olivas,* 129 B.R. 122 (Bankr. W.D. Tex. 1991)

(rule creating an affirmative duty on creditor to release a valid lien on pre-petition garnished

funds "would be a *de facto* taking of the Bank's property without due process of law in violation

of the Fifth Amendment to the Constitution") (citing *Wright v. Union Cent. Life Ins. Co.,* 304

U.S. 502, 518 (1938)). For example, in *Bank of America, N.A. v. Johnson (In re Johnson),* the

court held that a creditor violated the automatic stay by filing a motion for default against the

debtor's employer in a garnishment proceeding that had been commenced pre-petition but also

held that the creditor had not violated the automatic stay by simply "declining to dismiss the

garnishment action." 479 B.R. 159, 172 (Bankr. N.D. Ga. 2012); *see also In re Miller,* 2011 WL

6217342 (Bankr. D. Colo. Dec. 14, 2011) ("the better view is that a creditor's refusal to release

garnished funds, to the potential detriment of its lien rights in those funds, does not violate the

automatic stay"); *In re Giles,* 271 B.R. 903, 906 (Bankr. M.D. Fla. 2002) (where "a creditor's lien might be destroyed if its collateral were released, the creditor must be provided adequate protection before being required to essentially turn over the account that is the subject of its lien by releasing its garnishment") (citation omitted); *Linsenbach v. Wells Fargo Bank (In re Linsenbach),* 482 B.R. 522 (Bankr. M.D. Pa. 2012) ("the view of the *Miller* and *Giles* courts is the correct one"); *In re Saults,* 293 B.R. 739, 749 (Bankr. E.D. Tenn. 2002). The *Johnson* court distinguished cases that dealt with either garnishments initiated post-petition or garnishments where an employer continued to withhold future post-petition earnings. 479 B.R. at 171 n.56 (distinguishing *In re Lord,* 270 B.R. 787 (Bankr. M.D. Ga. 1998) and *In re Dennis,* 17 B.R. 558 (Bankr. M.D. Ga. 1982)).[5]  Another court in the same district had held that even for a pre-petition and non-continuing garnishment the automatic stay required dismissal or release of a garnishment. *Roche v. Pep Boys, Inc. (In re Roche),* 361 B.R. 615, 621 (Bankr. N.D. Ga. 2005). The court in *Johnson* criticized the holding in *Roche* as not sufficiently considering the due process rights of the creditor as holder of a valid lien.  Similar to the Illinois statute on citations to discover assets, the Georgia garnishment statute created a lien upon garnished funds upon service of the summons of garnishment and subsequently as earned. 479 B.R. at 170-71.  The court noted that the *Roche* court's ruling that the creditor must dismiss or release the garnishment would essentially force a creditor to give up its possessory lien in garnished funds, and that "requiring the creditor to eliminate its lien immediately upon the filing of the case fails to take account of the creditor's rights to be heard with regard to the debtor's claims of exemptions and the avoidance of its lien." 479 B.R. at 171 n.56.

---

[5] The court in *In re Johnson* suggested that for continuing garnishments a creditor may have an obligation to take at least some step, such as informing the employer of the bankruptcy.  479 B.R. at 172-73 (noting that the creditor had failed to "take 'careful and deliberate steps' to stop the garnishment with regard to postpetition earnings that the automatic stay requires, such as promptly communicating with the Debtor and the Employer to advise them that garnishment should stop with regard to postpetition earnings.").

While the automatic stay prevents creditors from taking certain actions, the Bankruptcy Code generally requires notice and an opportunity to be heard before a creditor may be deprived of a property interest, including a lien.[6] *See, e.g., In re Mansaray-Ruffin*, 530 F.3d 230, 245 (3rd Cir. 2008) ("A creditor with a secured claim has a property interest and thus is entitled to due process protection before the interest may be impaired.") (citing *Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 795-800 (1983)).   Generally "unless action is taken to avoid a lien, it passes through a bankruptcy proceeding." *In re Pence*, 905 F.2d 1107, 1109 (7th Cir. 1990).   And while the Bankruptcy Code contains a number of provisions that would authorize avoidance of a lien, those provisions generally require notice and a hearing.  *See, e.g.,* Fed. R. Bankr. P. 9014(a) (relief in contested matters "shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought."); 7004 (service requirements for adversary proceedings, which pursuant to Fed. R. Bankr. P. 7001(2) includes a "proceeding to determine the validity, priority, or extent of a lien or other interest in property"); 2002 (notice requirements of time to object to confirmation of a plan); *see also In re Schoonover,* 331 F.3d 575, 578 (7th Cir. 2003) ("unless the debtor asked the bankruptcy court for relief [a] creditor's right to foreclose on [a lien] survives or passes through the bankruptcy" and therefore a judicial lienholder "may wait for notice under § 522(f).").

Nor was dismissal of the citation proceeding necessary to protect either the Debtor or her bankruptcy estate.  Since the state court was made aware of the bankruptcy and had stayed the citation proceeding, the *status quo* as of the petition date was maintained until this court could determine the rights of the parties to the funds in the accounts.

---

[6] Concern that the automatic stay simply maintain the *status quo* and not alter secured creditors' vested rights is also seen in Section 362(b)(3), which "permits perfection, or maintenance or continuation of perfection, free of the automatic stay that would otherwise be applicable, under circumstances in which the creditor's action would be effective against a trustee." 3 Collier on Bankruptcy ¶ 362.05[4] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2013).

In this case, and in marked contrast to *Thompson*, the collateral securing North Shore's lien was never in North Shore's possession or control. Therefore, neither Section 362(a)(3) nor Section 542(a) (requiring any entity "in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363" to deliver such property to the trustee) apply. These provisions are central to the Seventh Circuit's determination that the repossessed vehicle had to be returned immediately. 566 F.3d at 704 ("A reading of 11 U.S.C. § 542(a) also indicates that turnover of a seized asset is compulsory."). Additionally, many of the policy reasons stated in *Thompson* supporting placing the burden on the creditor to seek relief from the stay rather than on the debtor to seek turnover of the property do not apply in this case. The court in *Thompson* noted that one purpose for the stay is to allow "a debtor free use of his assets while the court works with both debtor and creditors to establish a rehabilitation and repayment plan" and that a vehicle is more productive in the hands of a debtor who might need the car to attend or find work. 566 F.3d at 707. Additionally, the court noted that it was harmful to the estate to require the debtor to bear the costs of seeking court relief and also "unfairly tips the bargaining power in favor of the creditor" if the debtor bears the burden. *Id.*

Here, of course, the controversy concerns a deposit account, not a vehicle. The creditor's lien in the vehicle in *Thompson* was secured by title and was therefore unaffected by the return of the vehicle. In contrast, dismissal of the citation would have destroyed any lien North Shore had in the account. Further, to the extent that North Shore had a security interest in that account, it constituted "cash collateral" and, therefore, the Debtor would need to obtain court approval (or creditor consent) before using it. 11 U.S.C. §363(a), (c)(2).

Because of the unique nature of an Illinois citation lien and the circumstances of this case it would have been unfair to force North Shore to have to immediately decide whether to file a

motion for stay relief or dismiss its citation upon learning of the bankruptcy. As discussed above, a citation lien in Illinois attaches only to non-exempt property. Here, as of the petition date, the Debtor had not asserted any exemptions, partially because the bankruptcy stayed the initial return date hearing on the citation. Without knowing how much of the account the Debtor would claim as exempt, North Shore would have had little or no way to determine whether the value of the lien exceeded the filing fee and costs and expenses of filing a motion for relief from stay, or if it was better off just dismissing the citation. The Debtor did not file schedules and assert her exemptions until August 30, 2013. The 341 meeting of creditors was not concluded until September 17, 2013, meaning the time to object to claims of exemption ran at least through October 17, 2013. It is notable that once the Debtor finally filed schedules and provided more information about the accounts, North Shore readily consented to this court avoiding the lien on the Debtor's personal bank account.

Finally, it is notable that North Shore's citation lien apparently covered two corporate deposit accounts of the Debtor's law firm that the Debtor has admitted are not property of the estate. The citation as to such accounts would not have violated the automatic stay, but dismissal of the citation proceeding would have destroyed North Shore's lien in those accounts. The Debtor argues that North Shore should have taken steps to get McHenry Bank to release at least the Debtor's funds, or the Debtor's exempt funds, but has not explained how North Shore could have done so without jeopardizing its lien, including its lien in the non-estate accounts. The Debtor suggested that North Shore could have telephoned McHenry Bank, but it seems unlikely given the language in the citation notice and case law on citation respondent liability that McHenry Bank would have acted without a court order. It is also highly questionable whether North Shore could have sought a partial release order from the state court bank without violating

the automatic stay in doing so.  In order to rule on a request for partial relief, the state court would have presumably had to decide issues such as the Debtor's interest or ownership in accounts and the validity of the Debtor's exemptions.  At least one court has held that "post-filing dismissal in favor of the bankrupt of an action that falls within the purview of the automatic stay violates the stay where the decision to dismiss first requires the court to consider other issues presented by or related to the underlying case." *Dean v. Trans World Airlines, Inc.,* 72 F.3d 754, 757 (9th Cir. 1995).

Therefore, based on the undisputed facts, the Debtor has not demonstrated that either North Shore or Attorney Lang violated the automatic stay when they did not immediately dismiss the citation lien on the three bank accounts, two of which later the Debtor conceded are not property of the estate.

B.  Any Violation of the Stay Was Not Shown to be Willful

Even if North Shore's or Ms. Lang's inaction had been a violation of the automatic stay, the Debtor has not demonstrated that the violation was willful.  It is undisputed that Ms. Lang and by implication North Shore, were first informed of the bankruptcy filing at or within minutes before the citation hearing, and therefore were taken somewhat by surprise.  The state court was made aware of the bankruptcy less than an hour after the petition was filed. *See, e.g. Sternberg v. Johnston*, 595 F.3d 937, 944 (9th Cir. 2010) ("We do not fault Sternberg for anything he did at the May 17 state court hearing, because the news of Johnston's bankruptcy filing came as a surprise to him").  And when, at the July 29, 2013 hearing the Debtor's counsel raised the filing of the bankruptcy petition, Judge Bolger stated, "You can bring that matter before the bankruptcy judge," and Debtor's counsel responded, "I shall." (Transcript, ECF No. 32, 5:18-23).  Given the

short time frame and the Debtor's comments made to Judge Bolger it is reasonable that North Shore did not immediately act.    At an evidentiary hearing before this court on August 29, 2013, Ms. Lang testified that her understanding of Judge Bolger's comments were that North Shore was to do nothing and to maintain the *status quo* unless and until otherwise ordered by the bankruptcy court.    She also testified that she eventually intended to file a motion for relief from stay but was waiting for the Debtor to file schedules.    And as noted in the prior section, it was not unreasonable for North Shore to briefly wait until schedules were filed and the Debtor claimed her exemptions so that it could evaluate whether the accounts were exempt and how much were non-estate property.    Therefore, based on the circumstances, even if the respondents' inaction had been a violation of the stay, it was not shown to be willful.

C.  Conclusion

Therefore, Debtor's motion for rule to show cause will be denied.    The foregoing constitutes findings of fact and conclusions of law as required by Fed. R. Civ. P. 52(a) and Fed. R. Bankr. P. 7052.

A separate order will be entered consistent with this Memorandum Opinion.

DATE:  March 31, 2014

ENTER:

Thomas M. Lynch
United States Bankruptcy Judge